UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY KAY DALTON,

    Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

Hon. Ellen S. Carmody

Case No. 1:09-cv-00286

**OPINION**

       This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. On July 20, 2009, the parties consented to proceed in this Court for all further proceedings, including an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (Dkt. #8).

       Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **reversed and this matter is remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 39 years old at the time of the ALJ's decision. (Tr. 16-17). She successfully completed high school and previously worked as a cashier, lunchroom and recess aide, and fast food restaurant employee. (Tr. 16, 98-102).

Plaintiff applied for benefits on April 14, 2005, alleging that she had been disabled since May 25, 2004. (Tr. 10). Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 22-86). On April 14, 2008, Plaintiff, who was not represented, appeared before ALJ Robert Senander. (Tr. 224-34). The ALJ advised Plaintiff of her right to be represented by counsel and, furthermore, informed her of the ability to obtain representation "totally free of charge." Plaintiff indicated that she wanted an opportunity to obtain counsel. Accordingly, the ALJ, after obtaining releases to obtain additional medical records, adjourned the hearing. On August 22, 2008, Plaintiff, without benefit of counsel, again appeared before ALJ Senander. (Tr. 235-46). In an opinion dated September 18, 2008, the ALJ denied Plaintiff's claim for benefits. (Tr. 10-17).

## RELEVANT MEDICAL HISTORY

On May 4, 2004, Plaintiff was examined by Dr. Molly Crissman. (Tr. 163). Plaintiff reported that she "pulled" her back when she was moving "very large objects including beds and mattresses last week." (Tr. 163). Plaintiff exhibited "discomfort" in the right SI joint area, but straight leg raising was negative and there was no evidence of neurological abnormality. (Tr. 163). Plaintiff was diagnosed with a lumbar strain and prescribed Vicodin. (Tr. 163).

On June 9, 2004, Plaintiff was examined by Dr. Thomas Zyniewicz. (Tr. 152). Plaintiff reported that she was experiencing left wrist pain. (Tr. 152). An examination of Plaintiff's wrist was unremarkable with no evidence of numbness, tingling, paresthesias, loss of function, diminution in range of motion, or sensory abnormality. (Tr. 152). X-rays of Plaintiff's wrist were "normal." (Tr. 152).

On August 5, 2004, Plaintiff was examined by Dr. Crissman. (Tr. 163). Plaintiff reported that she hurt her lower back pain after she "skidded out" while riding "a dirt bike." (Tr. 163). She exhibited "discomfort" in her lumbar spine and SI joints, but straight leg raising was negative. (Tr. 163). Plaintiff was diagnosed with a low back strain and prescribed Vicodin. (Tr. 163).

On November 11, 2004, Plaintiff was examined by Dr. Crissman. (Tr. 160). Plaintiff reported that she recently "fell down about two or three steps" and was experiencing pain in her lumbar spine. (Tr. 160). An examination was unremarkable and straight leg raising was negative. (Tr. 160). Plaintiff was diagnosed with a lumbar contusion and prescribed Vicodin. (Tr. 160).

On January 17, 2005, Plaintiff reported to the emergency room complaining of lower right leg pain. (Tr. 148-49). Plaintiff reported that she hurt her leg when she fell down a set of

stairs. (Tr. 148). An examination revealed a "mild" abrasion, but no evidence of bruising or neurovascular compromise. (Tr. 148). X-rays were "negative" with no evidence of fracture, dislocation, or osseous pathology. (Tr. 150). Plaintiff was given Vicodin. (Tr. 148).

On January 20, 2005, Plaintiff reported that her right ankle and knee "feel okay." (Tr. 159). An examination revealed only "slight bruising" with "minimal" tenderness. (Tr. 159). Plaintiff was prescribed additional Vicodin. (Tr. 159).

On January 24, 2005, Plaintiff reported that her leg was still "bothering her quite a bit," but "is a little bit less than it was before." (Tr. 158). Plaintiff was able to put weight on her leg, but was still "limping quite a bit." (Tr. 158). An examination revealed "some bruising," but was otherwise unremarkable. (Tr. 158). X-rays were negative. (Tr. 158). Dr. Crissman concluded that Plaintiff "just bruised things," but nonetheless provided Plaintiff with additional Vicodin. (Tr. 158).

On March 1, 2005, Plaintiff was examined by Dr. Crissman. (Tr. 157). Plaintiff reported that she fell the previous day "while shoveling." (Tr. 157). Plaintiff reported that she needed more pain medication because "her mother-in-law cleaned out her closet and threw any medications away." (Tr. 157). The results of an examination were unremarkable. (Tr. 157). Plaintiff was diagnosed with an SI joint strain and given another prescription for Vicodin. (Tr. 157).

On March 29, 2005, Plaintiff discussed with Dr. Crissman the possibility of "pursuing disability." (Tr. 156). Plaintiff reported that she "has tried applying to multiple jobs," but "feels her obesity is what is closing the doors on her." (Tr. 156). Plaintiff weighed 408 pounds. (Tr. 156). The doctor noted that Plaintiff was "going to start the pursuance of disability," but that "ideally losing weight would be most appropriate." (Tr. 156).

5

On May 3, 2005, Plaintiff completed a report regarding her activites. (Tr. 110). Plaintiff wrote that "most of my days is spent picking up, cleaning, laundry." (Tr. 110). Plaintiff reported that she has to sit down to cook and do dishes. (Tr. 110). Plaintiff reported that in order to perform most tasks "I sit on a chair." (Tr. 112).

On October 28, 2005, Plaintiff was examined by Dr. Dirk Bakker. (Tr. 124). Plaintiff reported that she was experiencing left elbow pain. (Tr. 124). An examination of Plaintiff's elbow revealed "moderately severe tenderness," but full range of motion, "5/5" strength, and "normal" sensation. (Tr. 124). X-rays of Plaintiff's elbow were "negative" with no evidence of fracture, dislocation, or other bony abnormality. (Tr. 133). The doctor recommended a conservative course of treatment consisting of physical therapy and injection therapy. (Tr. 124). On December 7, 2005, Plaintiff reported to Dr. Bakker that she had experienced "near complete improvement after physical therapy and injection." (Tr. 124). An examination of Plaintiff's left elbow was unremarkable. (Tr. 124).

X-rays of Plaintiff's left knee, taken on October 22, 2007, were "negative" with no evidence of bone, joint, or soft tissue abnormality. (Tr. 127).

On April 10, 2008, Plaintiff reported to Dr. Bakker that she was experiencing pain in her left knee and left wrist. (Tr. 122). An examination of Plaintiff's knee revealed no evidence of warmth or erythema. (Tr. 122). There was no evidence of varus or valgus instability. (Tr. 122). The doctor noted that the range of motion in Plaintiff's knee was limited by her "body habitus." (Tr. 122). Plaintiff exhibited 5/5 strength and "normal" sensation. (Tr. 122). Dr. Bakker diagnosed Plaintiff with left quadriceps tendinitis and prescribed physical therapy. (Tr. 122). An examination of Plaintiff's left wrist revealed no evidence of warmth, erythema, atrophy, or range of motion

limitation. (Tr. 122). Tinel's test[1] was "negative," but the doctor observed "decreased" grip and pinch strength. (Tr. 122). On April 24, 2008, Plaintiff participated in an EMG examination of her left wrist, the results of which revealed "moderate" cubital tunnel syndrome and "mild" carpal tunnel syndrome. (Tr. 122). Dr. Bakker recommended a conservative course of treatment consisting of elbow and wrist splints. (Tr. 122).

On June 9, 2008, Plaintiff was evaluated by Dr. Bakker. (Tr. 121). Plaintiff reported that after use of a splint her left cubital tunnel syndrome was "definitely improved in the hand with no further numbness." (Tr. 121). Plaintiff also reported experiencing pain in her left elbow. (Tr. 121). Plaintiff exhibited a full range of elbow motion with no evidence of warmth, swelling or erythema. (Tr. 121). An examination also revealed that Plaintiff's left knee was "ligamentously stable." (Tr. 121). McMurray's[2] test was also "negative." (Tr. 121). The doctor advised Plaintiff to continue her home exercises and attempts at weight loss. (Tr. 121).

## ANALYSIS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from obesity, a severe impairment that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 12-13). The ALJ concluded that while Plaintiff could not perform

---

[1] Tinel's test (or Tinel's sign) is performed to determine the presence of carpal tunnel syndrome. *See* Tinel's and Phalen's Tests, available at http://www.carpal-tunnel-symptoms.com/tinels-and-phalens-tests.html (last visited on July 12, 2010). Tinel's test is performed by tapping over the carpal tunnel area of the wrist with the palm up. A positive test causes tingling or paresthesia, and sometimes even a "shock type sensation," in the median nerve distribution. *Id.*

[2] McMurray's sign refers to the occurrence of a clicking sound during the manipulation of the knee, which is indicative of an injury of a meniscus of the knee joint. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* M-72 (Matthew Bender) (1996).

her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 13-16). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

While the burden of proof shifts to the Commissioner at step five of the disability

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

determination procedure, Plaintiff bears the burden of proof through step four, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work, subject to the following limitations: (1) she cannot climb ladders, ropes, or scaffolds; (2) she can only occasionally balance, stoop, kneel, crouch, crawl, or climb stairs or ramps; and (3) she cannot be exposed to heights. (Tr. 13-14). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff could not perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. To support his conclusion that Plaintiff was not disabled, the ALJ did not question a vocational expert, but instead relied exclusively on the medical-vocational guidelines (a.k.a. the Grids).

1. The ALJ Improperly Relied on the Medical-Vocational Guidelines

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2 § 200.00(a). Social Security regulations provide that "[w]here the findings of fact made with respect to a particular

9

individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).

The grids, however, only take into consideration a claimant's exertional (i.e., strength) limitations. Accordingly, where a claimant suffers from "nonexertional limitations that significantly restrict the range of available work," use of the grids alone to make a disability determination is inappropriate. *See Jordan v. Commissioner of Social Security*, 548 F.3d 417, 424 (6th Cir. 2008). As the Sixth Circuit observed:

> [W]here a claimant has nonexertional impairments alone or in combination with exertional limitations, the ALJ must treat the grids as only a framework for decisionmaking, and must rely on other evidence to determine whether a significant number of jobs exist in the national economy that a claimant can perform. Reliance upon the grids in the presence of nonexertional limitations requires reliable evidence of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [her] exertional limitations.

*Id.* at 424 (internal citations omitted).

With respect to whether he could resolve Plaintiff's application for benefits by relying solely on the grids, the ALJ concluded that:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, considering the claimant's age, education, and work experience, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.27. However, the additional [non-exertional] limitations have little or no effect on the occupational base of unskilled sedentary work, of the claimant a younger individual. A finding of 'not disabled' is therefore appropriate under the framework of this rule.

(Tr. 16).

As noted above, the ALJ determined that Plaintiff was limited by various non-

10

exertional limitations. In support of his conclusion that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled sedentary work," the ALJ provided neither evidence nor analysis. The ALJ instead relied on nothing more than an unsubstantiated conclusion that such is the case. However, as the Sixth Circuit has clearly held, "[r]eliance upon the grids in the presence of nonexertional limitations requires *reliable evidence* of some kind that the claimant's nonexertional limitations do not significantly limit the range of work permitted by [her] exertional limitations." Because the ALJ has offered no evidence in support of his conclusion that Plaintiff's non-exertional limitations "have little or no effect on the occupational base of unskilled sedentary work," the Court finds that the ALJ's decision is not supported by substantial evidence.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of her disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision fails to comply with the relevant legal standard, there does not exist compelling evidence that Plaintiff is disabled. The Commissioner's decision must, therefore, be reversed and this matter remanded for further factual findings, including but not necessarily limited to, the extent to which Plaintiff's non-exertional impairments limit the range of work permitted by her exertional limitations.

## **CONCLUSION**

For the reasons articulated herein, the Court concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. The Court further concludes, however, that there does not exist compelling evidence that Plaintiff is disabled. Accordingly, the Commissioner's decision is **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Date: July 16, 2010                                       /s/ Ellen S. Carmody
                                                          ELLEN S. CARMODY
                                                          United States Magistrate Judge